STATE of Texas et al., Appellants,

v.

Bertha Ila WILLIAMS et al., Appellees.

No. 10683.

Court of Civil Appeals of Texas.

Austin.

July 15, 1959.

Rehearing Denied Aug. 5, 1959.

Will Wilson, Atty. Gen., H. Grady Chandler, John B. Webster, Asst. Attys. Gen., for The State.

Black & Stayton, Austin, for Texas Co.

Harrington & Harrington, H. M. Harrington, Jr., Longview, Charles E. Crenshaw, Austin, for appellees.

ARCHER, Chief Justice.

This appeal is from a judgment of partition, in which appellees were awarded 1.76 acres, described by metes and bounds, out of a tract of 7.047 acres, and the remaining ¾ths partitioned to the State. The judgment provided that neither the plaintiff nor the Wallace Heirs shall in any way conduct drilling or production operations upon any part of the surface of the highway right of way or in any manner interfere with the State's exclusive use of the surface.

The suit was instituted by Bertha Ila Williams against the State of Texas and the Highway Commission on September 3, 1953, alleging that plaintiff and defendants were joint owners of the mineral estate underlying a strip of land and describing it; that plaintiff owned an undivided ¼th interest in the mineral estate and that defendants were the owners of an undivided ¾ths interest therein.

By Senate Concurrent Resolution No. 11, which is fully set out in the pleadings, it is recited that the "Wallace Heirs" are the

alleged owners of an undivided ¼th interest in a portion of State Highway No. 15 in Wood County and that Bertha Ila Williams had an oil, gas and mineral lease thereon, and authorized suit under conditions.

On September 28, 1953, the State answered by plea in abatement alleging that the Wallace Heirs were not parties to the suit and prayed that the suit be dismissed. Further answer was by way of denial, claim of ownership, both as to the surface estate and mineral estate, and of possession.

On November 18, 1953, The Texas Company filed its plea of intervention and claimed to own the oil and gas leasehold fee estate to the undivided ¼th interest, and alleged that neither the plaintiff nor the "Wallace Heirs" owned any interest in the mineral estate.

On September 29, 1958, Henry J. Wallace et al. filed a plea of intervention claiming to have an interest in the matter in controversy and owned an undivided ¼th fee interest in the land sought to be partitioned, and that their presence in the suit was necessary for a proper rendition of judgment, and adopted the original petition.

On October 16, 1959, the State of Texas and the Highway Commission filed a Motion to Strike the Plea of Intervention filed by Henry J. Wallace et al. for the reason that such plea seeks affirmative relief against the State without legislative authority and that if ever intervenors had a cause of action same is barred by the limitation expressly placed in the Resolution that no action could be filed after two years subsequent to April 28, 1953.

On October 16, 1958, the defendants, without waiving their Motion to Strike the Plea of Intervention, filed a plea in abatement to the effect that the suit was not filed within two years as provided by the Resolution.

Further answer was that of general denial, special denial, and that if ever intervenors owned any interest in the land that they divested themselves of such by one or more conveyances, towit:

1. Deed to H. J. Cobb et al., dated January 17, 1941, conveying a 93 acre tract and a 17.3 acre tract.

2. Deed to Eugene Talbert, dated March 29, 1941 and a deed to Talbert dated April 25, 1941, conveying that part of the H. F. Robinson Survey lying north of State Highway No. 15.

Further answer was that the State was the fee owner of all of the 7.047 acre tract.

Further answer was that if intervenors, Henry J. Wallace et al., ever had title in the 7.047 acre tract as cotenants with M. L. Cobb that such title was divested by deed from M. L. Cobb to the State dated August 8, 1933, by their acquiescence in such conveyance and prayed that plaintiff and all intervenors take nothing.

The State, as appellant, has three points to the effect that the court erred in rendering judgment for partition because the undisputed evidence shows that the appellees do not own any interest in the land or mineral estate, in overruling the Motion to Strike the Plea of Intervention of the Wallace Heirs, because such plea constituted an action against the State, not authorized, and not in compliance with the Resolution.

The Texas Company as appellant makes the point that the court erred in holding that appellees have title to ¼th of the mineral estate because the Wallace Heirs conveyed to appellants' mineral lessors all of appellees' title to the property immediately north of the highway, and such conveyance as a matter of law included the mineral interest, if any, in the adjacent highway strip.

The land sought to be partitioned is a long strip 145.3 feet in width lying along the southern boundary of a tract of land divised to Minnie L. Cobb.

The Wallace Heirs acquired an undivided ¼th interest in several tracts of land

including the 7.047 acre tract by partition deed in 1923 with the Cobb Heirs.

The subject matter of this case, if not in whole, in part, has been before this Court in two instances.

The first was in Texas Company v. Railroad Commission of Texas, Tex.Civ.App., 246 S.W.2d 487, 489, er. ref., N.R.E., in which this Court made findings, in part, as follows:

"On March 21, 1923, Minnie Lee Cobb conveyed an undivided one-fourth interest in the land devised to her by the will of H. S. Cobb to the heirs of Mrs. L. A. Wallace. * * *

\* \* \* \* \* \*

"After December, 1940, and on January 14, 1941, the heirs of Mrs. L. A. Wallace conveyed to J. O. Cobb their undivided one-fourth interest in the 17.3 or 15.25 acre tract. This conveyance left to the Wallace heirs their undivided one-fourth interest in the 4½ acre and 1 acre tracts."

The second case was Humble Oil & Refining Company v. L. & G. Oil Co., Tex. Civ.App., 259 S.W.2d 933, er. ref., N.R.E.

It is apparent that unless the deed from Henry J. Wallace et al. to H. J. Cobb et al. dated January 14, 1941, conveyed the undivided ¼th mineral interest they owned in the highway strip, the title remained in them. In this deed two tracts, one containing 93 acres in which a royalty was retained, and the other containing 17.3 acres in which no royalty was reserved, were conveyed.

The appellant, The Texas Company, takes the position that the State never acquired the undivided ¼th mineral interest in the land in dispute, and further that The Texas Company acquired in its lease dated April 4, 1941, the same interest which H. J. Cobb et al. acquired from the Wallace Heirs, and that the lease expressly conveys "all the oil, gas and other minerals in and under the above described land," and that in describing the 17.3 acre tract, the

last call was "Thence Easterly following said Highway N. 80 to the place of beginning" the entire highway being incidental to ownership of the tract conveyed, was conveyed.

Appellants cite Cox v. Campbell, 135 Tex. 428, 143 S.W.2d 361; Cantley v. Gulf Production Co., 135 Tex. 339, 143 S.W.2d 912, and other cases as establishing the rule contended for.

The State takes the position that a deed dated April 25, 1941, executed by the Wallace Heirs to Eugene Talbert in lieu of a prior deed covering approximately 25 acres of land lying north of State Highway 15, conveyed appellees' ¼th interest in the 7.047 acre tract, as a part of the property conveyed, citing Cox v. Campbell, supra and other similar cases.

Appellees take the position that the deed from the Wallace Heirs to H. J. Cobb et al. conveys only the lands therein described and no mention is made of and no intent to convey the other tracts in which the Wallace Heirs had an interest.

We do not believe that the appellees, the Wallace Heirs, by their conveyance to H. J. Cobb et al. and/or to Eugene Talbert conveyed any interest in or underlying the 7.047 acre tract, or in any event the mineral interest.

As illustrating the tracts of land we are inserting a plat of the area: *(See p. 554)*.

The 50 acre tract was sold by H. S. Cobb during his lifetime and is the tract referred to in the case of Texas Company v. Railroad Commission of Texas, Tex.Civ. App., 246 S.W.2d 487.

The north ½ of the right of way of the Texas & Pacific Railway, which was owned as to the south half by the owners of the 50 acre tract, was the subject of the matter passed on in Humble Oil & Refining Company v. L. & G. Oil Co., supra and is shown as Tract No. 2 on the plat.

Tracts Nos. 4 and 5 are shown as the Henry tracts.

PLAT

SHOWING SUBDIVISIONS OF THE
H. F. ROBINSON    SURVEY

J.M.Henry
④
4.4 Ac.

1 Ac
⑮

H.J.Cobb, et al.
⑥
17.3 Acres

1.76 Ac.    ③    7.047 acres

②    2.59 Acres

Texas & Pacific Railway Right-of-way

50 Acres conveyed by H.S.Cobb

H.J.Cobb, et al.

①

So-called 93 Acres

Tract No. 6, the 17.3 or 15.25 acre tracts were discussed in our opinion in the Humble case.

Both appellants contend that the conveyance from the Wallace Heirs to H. J. Cobb et al. conveyed not only the 17.3 acre tract but also the 7.047 acre tract.

The deed purports to convey the 93 acre tract with certain mineral reservations and the 17.3 acres, describing it by metes and bounds as beginning "* * * corner which is on U. S. Highway 80 and State Highway 15 * * * Thence South * * * to U. S. Highway 80 and State Highway 15 rights of way; Thence East along the right of way * * *. This also being deeded to the Highway Department by M. L. Cobb * * *."

No mention is made of tracts 2, 3, 4 or 5 in the deed.

The State takes the position that a deed to Eugene Talbert, dated March 29, 1941, and in lieu of deed dated April 25, 1941, has conveyed appellees' ¼th interest in the 7.047 acre tract opposite the Henry 4.4 acres and the 1 acre tracts. In this deed the property is described as "All that certain tract * * * lying and being North of State Highway No. 15 * * *."

We do not believe that the doctrine announced in Cox v. Campbell, supra, is applicable since the State owns in fee ¾ths of the 7.047 acre tract and not a mere easement and the Wallace Heirs a ¼th interest therein.

At the time of the conveyance of the 17.3 acre tract the Wallace Heirs owned a ¼th interest in tract No. 2, on which the Railway Company held an easement, and a ¼th interest in fee without an easement under the 7.047 acre tract.

In Cantley v. Gulf Production Co., supra [135 Tex. 339, 143 S.W.2d 915], the the court held that "In this instance Douglass and his children conveyed all the land they owned in this vicinity adjoining this strip of land, and surrendered possession of such land to the grantees, including the strip in controversy." and held that grantor's interest in the minerals underlying a street or road, designated on a plat as a dedicated street, were conveyed to the centerline of the street.

In the present case the Wallace Heirs owned in addition to the 17.3 acre tract, four adjacent tracts as designated on the plat and had reason to reserve their interest therein.

■ We conclude that the court was justified in rendering judgment for appellees.

■ We do not believe that the court erred in overruling the State's Motion to Strike the Plea in Intervention filed by H. J. Wallace et al. or in overruling defendants' plea in abatement.

The Resolution granting permission to sue the State was given to Bertha Ila Williams, individually and as attorney in fact for the Wallace Heirs and to the Wallace Heirs.

A two year limitation was included in which to file suit for partition. Within two years Bertha Ila Williams filed a suit for partition. The State having raised the question of necessary parties, the Wallace Heirs intervened. No new pleas were set forth, their claim for recovery was for partition. Rule 60, Texas Rules of Civil Procedure; Jones v. English, Tex.Civ.App., 235 S.W.2d 238, er. dism.

The judgment of the Trial Court is affirmed.

Affirmed.

HUGHES, Justice (dissenting).

In my opinion the pertinent deeds, the deed from the Wallace heirs to H. J. Cobb et al., dated January 14, 1941, conveying the 17.3 acre tract and the deed from the Wallace heirs to Eugene Talbert, dated April 25, 1941, between the same parties conveying a 30 acre tract including the 4.4 and 1 acre tracts shown on the plat in the majority opinion should be construed as

conveying the ¼th interest owned by the Wallace heirs in the 7.047 acre tract in suit.

These deeds describe the south boundary of the lands being conveyed as a public highway.

The following stipulation of the parties was carried into the judgment of the Trial Court:

"Mr. Crenshaw: It is agreed between all parties to the suit, Intervenors, Plaintiffs and Defendants, that concerning the land in question, namely, the seven-acre tract in Wood County, Texas, which is now occupied by U. S. Highway No. 80, over the surface of said land—

"Mr. Stayton: And State Highway 15.

"Mr. Crenshaw: —and State Highway 15, * * *."

The record also shows this stipulation:

"Mr. Stayton: Your Honor, I represent the Texas Company, the Intervenor in this case, on the side of the State. I would like to ask these gentlemen, to save a little time, while they are making their stipulation, if we couldn't stipulate that State Highway 15, which I believe Mr. Harrington will verify, was the first highway that is here involved, has been there, according to my information in the Highway Department, since 1918. Is that correct?

"Mr. Harrington: That is just on a portion of this land. You have had some changes. Following 1933, the Deed in question, the highway was enlarged and took in additional area, but there was the original highway—

"Mr. Stayton: Occupied part of the area—

"Mr. Harrington: Occupied a part.

"Mr. Stayton: —since 1918, known as State Highway 15?"

"Mr. Harrington: That is correct."

The following facts are undisputed:

(1) The State of Texas owned a ¾ths fee interest in the tract in suit by virtue of a deed from Minnie L. Cobb, dated August 8, 1933. This deed recited that 3.-889 acres of this tract was "additional right of way."

(2) A portion of the tract in suit had been used as a public highway since 1918.

(3) The Wallace heirs owned, when the above mentioned deeds were executed by them, an undivided ¼th interest in the tract in suit.

(4) Such deeds contain no language reserving or in any manner indicating that the grantors intended to reserve any interest in the land in suit.

(5) The lands in suit border or run along the margin of the lands conveyed by such deeds by specific description.

The only conclusion which I can draw from the stipulations of the parties and the undisputed facts is that the undivided ¼th interest owned by the Wallace heirs in the lands in suit when their two deeds were executed was subject to an easement for road purposes in favor of the general public. The Wallace heirs by the descriptions contained in such deeds admitted, in effect, the existence of such easement. If this conclusion is correct then the decision here is controlled by prior decisions of our Supreme Court.

In Mitchell v. Bass, 26 Tex. 372, it is stated:

"The established doctrine of the common law is, that a conveyance of land bounded on a public highway carries with it the fee to the center of the road as part and parcel of the grant. Such is the legal construction of the grant unless the inference that it was so intended is rebutted by the express terms of the grant. The owners of the land on each side go to the center of the road, and they have the exclusive right to the soil, subject to

the right of passage in the public. Upon the discontinuance of the highway the soil and freehold revert to the owner of the land."

In commenting upon this case the court in Cox v. Campbell, 135 Tex. 428, 143 S.W. 2d 361, 362, stated:

"The rule announced in the foregoing case has been constantly followed and applied in this State. In the important case of Texas Bitulithic Co. v. Warwick, Tex.Com.App., 293 S.W. 160, it was held that a deed to a city lot, fronting or abutting on a street, described by metes and bounds, carries the fee to the center of the street, unless the contrary is expressly declared. The deed involved in that suit described the property conveyed by metes and bounds, stopping at the line of the street. Judge Powell wrote the opinion in that case, and, after an exhaustive review of the authorities, held that the conveyance carried the title to the center of the street."

As a corollary to this rule it is held that:

"Where a highway is laid off entirely on the owner's land, running along the margin of his tract and he afterwards conveys the land, the fee in the whole of the soil of the highway vests in his grantee." 9 C.J. p. 203, Sec. 97. See, also, 11 C.J.S. Boundaries § 35.

Cantley v. Gulf Production Co., 135 Tex. 339, 143 S.W.2d 912, Haines v. McLean, 154 Tex. 272, 276 S.W.2d 777.

In Cantley, supra, the Court said:

"It is well known that separate ownership of long narrow strips of land, distinct from the land adjoining on each side, is a fruitful source of litigation and dispute. To avoid this source of contention, it is presumed that a grantor has no intention of reserving a fee in a narrow strip of land adjoining the land conveyed when it ceases to be of use to him, unless such fee is clearly reserved. The reason for the rule is obvious. Where it appears that a grantor has conveyed all land owned by him adjoining a narrow strip of land that has ceased to be of any benefit or importance to him, the presumption is that the grantor intended to include such strip in such conveyance; unless it clearly appears in the deed, by plain and specific language, that the grantor intended to reserve the strip."

In Cantley it was also held that the fact that the roadway was never used or that it had been abandoned did not affect application of the rule which I have quoted.

In my opinion appellees have no title to the lands in suit and their plea for partition should have been denied. I respectfully dissent.